### SAYRE v. DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. PLEADING—DECLARATION—SUFFICIENCY—DEMURRER.

In an action against a railroad company for damages by a fire alleged to have been caused by an engine, where no demurrer was interposed or motion made, in view of the present liberal rule relating to pleadings under the judicature act (Act No. 314, Pub. Acts 1915, 3 Comp. Laws 1915, § 12004 et seq.) and Circuit Court Rule No. 22, this

court cannot say that the declaration was insufficient, although the time of day when the fire occurred is not alleged.

2. RAILROADS—FIRES—EVIDENCE—ENGINES.

Under the statute (2 Comp. Laws 1915, § 8305) plaintiff in an action against a railroad company for damages caused by fire must show by evidence which reasonably leads an unbiased mind to the conclusion that the particular engine charged caused the fire.

3. PLEADING—AMENDMENT—NEW CAUSE OF ACTION—LIMITATION OF ACTIONS.

An amendment to the declaration changing the allegation of the date of the fire from July 18, 1895, to July 17, 1895, did not introduce a new cause of action.

4. RAILROADS—FIRES—PLEADING—VARIANCE.

Where the declaration alleged that the fire was caused by a freight engine, but the record discloses that shortly after the fire defendant took a written statement from a witness which disclosed that a light engine passed about an hour after the freight engine and soon thereafter the fire was discovered, and that plaintiff's attorney, in opening the case, referred to these matters, and there was no claim of surprise on the part of defendant, it cannot be claimed that there was a fatal variance between the declaration and the evidence, although the evidence showed that the fire was caused by the light engine instead of the freight engine as alleged.

5. ABATEMENT AND REVIVAL—SURVIVAL OF ACTIONS—STATUTES.

Under 2 Comp. Laws 1915, § 10117, a cause of action against a railroad company for damages caused by fire survived the death of the plaintiff.

6. ASSIGNMENTS—CAUSES OF ACTION—TORTS.

A cause of action against a railroad company for damages caused by fire is assignable.

7. ABATEMENT AND REVIVAL—ASSIGNMENT OF INTEREST IN PENDING SUIT—REAL PARTY IN INTEREST.

The transfer of a plaintiff's title or interest in a pending suit at law does not abate it, but the suit may proceed as instituted so long as the assignee acquiesces in the proceeding, notwithstanding 3 Comp. Laws 1915, § 12353, providing that actions shall be prosecuted in the name of the real party in interest.

8. JUDGMENT—ASSIGNMENTS—PARTIES BOUND—RES JUDICATA.

Where plaintiff transfers his title or interest in a pending suit at law, and the assignee permits such action to proceed in the name of the assignor, the defendant cannot complain, since he is in no way injuriously affected, and any judgment that may be·recovered will be a bar to any future proceedings by the assignee for· the same cause·of action.

9. ABATEMENT AND REVIVAL—DEATH OF PLAINTIFF—ASSIGNMENT OF CAUSE OF ACTION—REVIVAL.

Where a plaintiff dies pending an action at law, it is necessary for the death to be suggested on the record and the suit to be continued in the name of the personal representative, under 2 Comp. Laws 1915, §§ 10113-10116.

10. APPEAL AND ERROR — EXECUTORS AND ADMINISTRATORS — RES JUDICATA.

Where no appeal was taken from the decision of the circuit court affirming the order of the probate court appointing an administrator *de bonis non*, that question is not open in proceedings to revive an action begun by deceased.

11. ABATEMENT AND REVIVAL—LACHES—RESPONSIBILITY FOR DELAY —STATUTES.

Where, under the statute (2 Comp. Laws 1915, §§ 10113-10116), defendant could have brought on the case at any time and had it dismissed on motion, the court will not place all the responsibility for a long delay upon the plaintiff and refuse a trial upon the merits.

12. LIMITATION OF ACTIONS—ABATEMENT AND REVIVAL—STATUTES.

3 Comp. Laws 1915, § 12320, limiting time for reviving actions to one year, applies to cases abated by the death of any party thereto, but has no application to an action which did not abate upon the death of the plaintiff.

13. DAMAGES—INTEREST—INSTRUCTIONS—TRIAL.

In an action for damages caused by fire, the court below was not in error in instructing the jury to add interest from the date of the commencement of the suit to the amount of damages found.[1]

Error to Shiawassee; Collins, J. Submitted January 28, 1919. (Docket No. 68.) Decided April 3, 1919.

---

[1]See note in 18 L. R. A. 449.

Case by Frank J. Sayre, administrator *de bonis non* of the estate of Charles H. Sayre, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company for the negligent burning of decedent's buildings. Judgment for plaintiff. Defendant brings error. Affirmed.

*Harrison Geer* (*H. R. Martin,* of counsel), for appellant.

*Leon F. Miner,* for appellee.

STONE, J. This is the second appearance of this case in this court. When first here the decision bore date December 27, 1917, and is reported in 199 Mich. 414. Reference is made to that opinion for a full statement of the facts to that time, and it will not be necessary to repeat that statement here. The order of the circuit court dismissing the case was reversed, and it was sent back for trial. A trial has been had, resulting in a verdict and judgment for the plaintiff for $3,184.43, and the case is brought here by the defendant, and the assignments of error argued by appellant will be considered.

Pending the first administration, and under date of July 14, 1905, all of Mr. Sayre's heirs-at-law, except his widow, Judith C. Sayre, assigned in writing to her all their right, title and interest in and to his estate. She is still living. On February 26, 1906, the administrator filed his final account, the allowance of which was consented to by all of the heirs, and was duly allowed by the probate court on that date. Under date of April 4, 1906, Judith C. Sayre receipted to the administrator for all the assets of the estate, and on April 9, 1906, the administrator was formally discharged.

It appears that the inventory and appraisal in the matter of said estate made no mention of the cause

of action upon which this suit was brought. Neither did the final account of the administrator in any way mention said cause of action. At the time of the said assignment of the heirs to the widow, and of her receipt to the administrator, all of the debts of said estate had been paid, and all expenses of administration had either been paid or provided for.

From November 30, 1896, when defendant's demand for a bill of particulars was denied by the court, until 1916, no steps were taken in the suit. The defendant's attorney had died in the meantime. In August, 1916, Frank J. Sayre was appointed administrator *de bonis non;* the defendant appeared in the probate court and contested the appointment; and appealed to the circuit court, filing its claim of appeal, in which it claimed that there was no unadministered estate; that the estate had been fully administered; that the property was assigned to Judith C. Sayre; that the statute of limitations was a bar; that the heirs were estopped from claiming that there were unadministered assets of said estate; that Judith C. Sayre must prosecute the suit in her own name; that she was estopped from claiming that there were any unadministered assets; that the estate had no further interest in all money, property or effects of said estate; that the former administrator not having revived and prosecuted the suit, and having settled the estate and been discharged, and the assignment to, and acceptance by said Judith C. Sayre, operated as an abandonment by said estate of said suit, and by reason thereof that said suit was abated, and could not be revived and prosecuted by an administrator *de bonis non;* and that the former administrator, the heirs, and the petitioner, Judith C. Sayre, had been and were guilty of such laches as legally precluded prosecution of said claim by an administrator *de bonis non,* and that said claim was not unadministered assets of said estate.

This appeal was heard at the circuit, the defendant by its attorney being present and contesting. The court seems to have been of the opinion that the case, not having been dismissed, was *prima facie* an asset of the estate, and the order of the probate court was affirmed. No appeal was taken from this decision. On November 25, 1916, by what appears to have been an *ex parte* order the death of the plaintiff was suggested and the case revived of record; and on the same date defendant was notified, pursuant to the statute, to appoint another attorney, and did so.

The plaintiff made a motion to increase the *ad damnum* clause of the declaration from $5,000 to $10,000, and to add the following: "And plaintiff further claims interest at the legal rate upon all sums of money heretofore due for the damages aforesaid." An order was made allowing such amendment and the amended declaration was filed, the second count of which was as follows:

"4. For that whereas on, to-wit: said 17th day of July, A. D. 1895, at the place mentioned in the last count, said plaintiff was possessed of in his own rights, a certain sawmill, situated on said land, machinery, belting and boiler used and connected with said sawmill and said lumber, logs, spokes, bolts and staves, all of great value, to-wit:  $4,000, and being so possessed on said day and said defendant well knowing the premises, but not regarding the safety and preservation of the property of plaintiff, did on, to-wit, the 17th day of July, A. D. 1895, aforesaid, run its freight train, composed of a locomotive engine and freight cars, over and along said track mentioned in said last count, at and near said building and so negligently and carelessly run its train and managed said engine, that it permitted sparks to escape from said engine and smokestack connected therewith, which so escaped, set fire to the grass and refuse matter upon said defendant's right of way and upon said plaintiff's premises, which said fire spread, and so spreading, burned said sawmill and said belting, and completely destroyed

said machinery and engine and burned up and completely destroyed said lumber, logs, spokes, belts and staves, and through the negligence and improper conduct of defendant as aforementioned, and without any negligence on the part of said plaintiff, said property was entirely destroyed to said plaintiff's damage of $10,000, and, therefore, he brings suit.

"5. And plaintiff further claims interest at a legal rate upon all sums of money heretofore due for the damages aforesaid."

The date of the fire was not changed from July 18, 1895, to July 17, 1895, until changed by order of court upon February 19, 1918. The defendant with leave of the court amended its plea by adding thereto notice of special defenses, in substance, the assignment and transfer to Judith C. Sayre, and that the failure to prosecute the suit from 1896 to 1916 constituted an abandonment; and that all of its records for 1895 relative to the inspection of engines, etc., were burned in a fire at Milwaukee Junction, in the fall of 1908.

The case was brought on to trial on February 19, 1918, the plaintiff's attorney, in his opening statement, stating that he would show that the fire occurred on July 17, 1895. The defendant objected to the introduction of any evidence, for the reason that the declaration alleged the fire to have occurred on July 18, 1895. The plaintiff asked leave to amend, to which objection was made on the ground that an amendment would set up a new cause of action, barred by the statute of limitations, but the amendment was allowed and exception taken. The case was then continued for the term, and again came on for trial April 25, 1918.

The testimony definitely fixed the date of the fire as July 17, 1895, the time of day at between 12 noon and one o'clock local time. The plaintiff's testimony showed that an east-bound freight train passed about 11:20 or 11:50 local time, and that about an hour

later a west-bound light engine passed, and that the
fire was discovered a few minutes later. There was
evidence that the fire started in or near a pile of
"hounds," just outside one of the store-houses, and
about ten feet outside the right of way; that the en-
gine was going about fifty miles an hour; the weather
had been dry for some time; that the wind, a strong
one, was blowing toward the mill from the railroad;
that there had been no fire in the mill that day and
nobody around the mill, and that in fact it had not
been running for a number of months; that there was
considerable grass and material on the premises; that
the grass on the right of way had been burned by the
section men about two weeks before the fire. The mill,
lumber, machinery, etc., were destroyed by the fire.
Several witnesses testified regarding the property de-
stroyed and its value.

The defendant showed by its testimony the burning
in 1908 of its 1895 engine records; the death of several
of its employees having to do with the inspection, etc.,
of its engines during the period at, and following the
fire; the nature of its standard fire extinguishing de-
vices in 1895, but it claims that because of the de-
struction of its records in 1908, it was unable to fur-
nish direct evidence regarding the equipment of the
light engine, or its management at the time of the fire.

It should be stated that the declaration stated that
the fire was caused by a freight train, not a light
engine. However, in his statement to the jury at the
opening of the case in February, 1918, and before the
continuance, plaintiff's attorney had said: "that a light
engine went by shortly after 12 o'clock, sun time."

Evidence was introduced by the defendant showing
the assignment to Judith C. Sayre, and the defendant's
position that the cause of action had been abandoned
was insisted upon. At the close of the testimony,
defendant moved for a directed verdict in its favor

on the ground that the declaration failed to state a cause of action, which motion was overruled and exceptions taken. In his argument to the jury one of plaintiff's counsel claimed, against the defendant's objection and exception, the right to recover interest at the rate of 5 per cent. per annum from the date of commencement of the suit.

The following requests of defendant to charge the jury were refused by the court:

"1st. Under all the testimony in this case, it will be your duty to find a verdict for the defendant.

"If the court declines to give this request, the defendant requests the court to instruct the jury:

"2d. It appears from the undisputed testimony in this case, that Charles H. Sayre departed this life on to-wit, the 5th day of August, 1902, intestate, and left an estate consisting of real and personal property of the value of approximately ten thousand dollars ($10,000); that such personal property was largely in excess of all claims and demands of every nature against said estate; that said Charles H. Sayre left surviving him as his sole heirs and distributees, his widow, Judith C. Sayre, his sons, Fred D. Sayre and Frank J. Sayre, his daughters, Lorena M. Hutchinson and Mary E. Sherman, all of whom were above the age of 21 years at the time of the decease of said Charles H. Sayre; that at the time of the decease of Charles H. Sayre, the suit now on trial was pending and untried and undetermined in this court; that on the 22d day of September, 1902, such proceedings were had in the probate court for Shiawassee county that one Elford C. Sherman was, by said court, appointed administrator of the estate of the said Charles H. Sayre, deceased; that said Sherman qualified as such administrator, entered upon and continued to execute his trust until, to-wit, the 9th day of April, 1906, when he was discharged by order of said probate court; that previous to the discharge of said administrator, said probate court adjudicated and adjusted all claims presented against said estate, and which were paid by such administrator, and that after said administrator had paid all of said claims and all of the expenses of

administering said estate, there remained in his hands
the property of said estate, money, property and effects
for distribution among the heirs and widow of said
Charles H. Sayre, deceased; that on the 14th day of
July, A. D. 1905, all of the heirs of said Charles H.
Sayre, deceased, executed the following instrument:

" 'In consideration of the love and affection which we, the
undersigned, have for our mother, Judith Sayre, do hereby as-
sign to said Judith C. Sayre, to have and to hold for and during
the period of her natural life, to do with as she sees fit, all the
right, title and interest which we or any of us have in any
money, property, or effects which might or otherwise would
come to us or any of us by reason of our right to share in the
property or estate of our father, Charles H. Sayre, deceased.

" 'In witness whereof, we have hereunto set our hands and
seals this, the 14th day of July, A. D. 1905. Signed by

" 'FRED D. SAYRE,
" 'FRANK J. SAYRE.
" 'LORENA M. HUTCHINSON,
" 'MARY E. SHERMAN,'

—and which was filed in the probate office for Shia-
wassee county on the 17th day of August, 1905, in the
matter of the estate of Charles H. Sayre, deceased;
that afterwards and on, to-wit, the 26th day of Feb-
ruary, 1906, the final account of said administrator,
showing payment in full of all claims against said
estate was filed with the probate court of said county
and among which was endorsed,—

" 'We, the undersigned, hereby consent to the allowance of the
within account, and request that the administrator be discharged
without further notice to us.

" 'JUDITH C. SAYRE,
" 'MARY E. SHERMAN,
" 'FRED D. SAYRE,
" 'LORENA M. HUTCHINSON,'

—and which account was, on the said 26th day of
February, 1906, allowed by order of Matthew Bush,
judge of probate; that on the 4th day of April, 1906,
Judith C. Sayre made and executed the following
paper:

" 'STATE OF MICHIGAN, in the Probate Court of Shiawassee County.
" 'In the matter of the estate of Charles H. Sayre, deceased.

" 'This is to certify that Elford Sherman, administrator of the above-named estate, has turned over to me all property, money and effects, belonging to the said estate, and I hereby acknowledge receipt in full to him for the same, the interest of all the heirs having been previously assigned to me.

" 'Dated this, the 4th day of April, 1906.

" 'JUDITH C. SAYRE,'

—and which was filed in the probate office of said county in the matter of said estate, on the 9th day of April, 1906, and that afterwards and on the 9th day of April, A. D. 1906, by an order and decree of the probate judge of said county, said administrator was acquitted and discharged of his said trust. Under these facts, you are instructed that the estate of Charles H. Sayre, deceased, divested itself of all right, title and interest in and to all of the property, money and effects of said estate, existing at the time of the execution of said assignment to Judith C. Sayre, and at the time of the transfer of the same to her by the administrator, all right, title and interest in and to the same became and was by reason of the facts appearing in this case, vested in Judith C. Sayre, at least during her lifetime, and the estate having thus divested itself of its title cannot now prosecute this cause of action.

"3d. You are instructed that plaintiff cannot recover in this case, for the reason that it appears from the testimony that it has no interest in the subject-matter involved in this cause of action.

"4th. You are instructed that under the facts as appearing in this case, that the heirs and widow, after all the debts and expenses of administering said estate had been fully paid, settled and divided said estate between themselves and that they are now estopped from alleging the contrary and that they cannot recover in this case.

"5th. You are instructed that more than six years having elapsed since the assignment by the heirs of Charles H. Sayre to the widow, Judith C. Sayre, before any steps were taken to revive this case that the statute of limitations is now a complete bar to its prosecution and your verdict should be for the defendant.

"6th. You are instructed that it appears from undisputed proofs in this case that after all the debts and expenses of administering the estate of Charles H. Sayre, deceased, had been paid by the administrator that all of the heirs of Charles H. Sayre, deceased, by an instrument in writing, did sell, assign to their mother, Judith C. Sayre, all the right, title and interest which said heirs, or any or either of them, had in all, or any money, property or effects of said estate including the cause of action for which this suit is being prosecuted and that this in connection with the various steps taken in closing up said estate by the administrator and the probate court had the legal effect of divesting the estate of all its interest in such property and of vesting the legal title thereto in said Judith C. Sayre, at least during her lifetime, and under this state of facts, the plaintiff cannot recover in this case.

"7th. You are further instructed that under the facts in this case the plaintiff must be held to have abandoned, that is, of having forsaken or given up the prosecution of this case, and for such reason, plaintiff cannot recover.

"8th. If you find, from the testimony in this case, that this case was commenced by Charles H. Sayre some time in. 1895, that it was not brought to trial during his lifetime, that the administrator of said estate never took any steps to revive and prosecute the same, that all of the heirs assigned to the widow all their right, and interest in all the money, property and effects of said estate as disclosed by the testimony in this case, and that such property was distributed by the administrator to said widow and by her receipted for to him in the course of administration, that the administrator was discharged in 1906, and that no steps were taken by anyone, looking towards the revival of this cause until some time in 1916, you are instructed that you have a right to take each and all of these facts and all the facts and circumstances in this case into consideration in determining whether or not these parties abandoned this case, and if you find that up to the time, and about the time, an application was made to the probate court for the appointment of

an administrator *de bonis non,* these heirs and widow had abandoned this case, then I instruct you that plaintiff cannot recover in this case.

"9th. The cause of action involved in this suit having, as is disclosed by the undisputed testimony in this case, been sold, assigned and transferred by the heirs of Charles H. Sayre, deceased, and by his estate, to Judith C. Sayre, and the legal title thereto having vested in her, and now being in her, this suit cannot be prosecuted by the administrator *de bonis non* of the estate of said Charles H. Sayre, deceased.

"9-A. I instruct you that the second count of plaintiff's declaration in this case charges, in substance, that defendant, on the 17th day of July, 1895, carelessly and negligently ran the engine in question past the property of the plaintiff involved in this case. You are instructed there is no testimony in this case to establish, or pretend to establish, such allegations, nor is there any testimony tending in any way to prove that defendant negligently and carelessly permitted a spark to escape from said engine when passing plaintiff's mill, and the verdict will, therefore, be for the defendant.     *     *     *

"9-C. The testimony in this case discloses that Judith C. Sayre is the legal owner of the subject-matter involved in this case and that plaintiff has no right, title nor interest therein, your verdict will, therefore, be for the defendant.   [Cummins & Beecher, Michigan], Judicature Act, § 476 (3 Comp. Laws 1915, § 12353) ; *Lange* v. *Perley,* 47 Mich. 352.     *     *     *

"11th. I charge you that the declaration filed in this case makes no claim that the equipment of defendant was in a bad condition of repair. I charge you that you shall not consider the condition of repair of defendant's engine.

"12th. I charge you that under the declaration of plaintiff, he must show by preponderance of the evidence, that the engine of defendant was improperly managed at the time in question before he is entitled to recover, and I further charge you that the fact that the engine in question may have thrown sparks as it passed the mill premises is no evidence of improper management.

"13th. I charge you that the declaration herein alleges an engine drawing a freight train emits sparks

which it is claimed set the fire. I charge you that the evidence fails to show that any freight train passed the mill property within such a time that it could have set the fire in question. I charge you that the evidence shows a light engine passed the mill property, said engine going in a westerly direction, before the fire occurred. I charge you that should you find, under the evidence, the fire was set by the light engine, plaintiff cannot recover because to permit you to render a verdict against defendant, should you find the fire was set by a light engine, would be a variance between the pleadings and proofs.

"14th. I charge you that the evidence shows that the fire in question caught either in dry grass or in a pile of culled hounds on the mill premises. I charge you that under the evidence plaintiff was guilty of contributory negligence in the premises in permitting dry grass, hounds and other accumulations of refuse to remain on his premises and in such a position as to be apt to take fire from the sparks of a passing engine. I charge you that plaintiff was guilty of contributory negligence in the premises and cannot recover.

"14½. I charge you that if you find plaintiff entitled to recover, he is only entitled to such sum as the reasonable and fair worth of the machinery and mill buildings would be as they stood on the property at the time of the fire. I charge you that the measure of damages being unliquidated, this is not such a case as would warrant you in giving any interest on such sums as you may feel plaintiff entitled to recover in addition to the value of the mill and machinery.

"15th. I charge you that before plaintiff is entitled to recover any sum for loss of materials in said mill, he must show what materials were contained therein by competent evidence and not by guess or conjecture.

"16th. I charge you that in considering whether plaintiff has established by preponderance of the evidence the value of the materials which it is claimed were destroyed, you have a right to consider the length of time between the fire and the time when the witnesses who have testified on the subject, attempted to determine the quantity of the various articles of material which it is claimed were destroyed in the fire,

and to consider the probability of their being able to accurately determine this fact at this late day.

"17th. The defendant requests the court to instruct the jury that they should find the actual cash value of the property at the time of the destruction at the place where the same was destroyed by fire, and extend the amount so found if they find for the plaintiff.

"18th. The court instructs the jury that no interest should be allowed upon any amount that may be found due the plaintiff by reason of said fire."

The assignments of error are to the effect that the court erred in permitting the plaintiff to amend the declaration by increasing the *ad damnum* clause from $5,000 to $10,000; and in allowing the amendment in the declaration to state that the alleged fire occurred on the 17th day of July, 1895, instead of on the 18th day of July, 1895, as originally alleged; in overruling defendant's objection to any evidence being received because the declaration failed to state a cause of action; and in holding that the declaration was sufficiently specific to allow the introduction of evidence; that the court erred in overruling defendant's motion to strike out the evidence that had been given on the part of the plaintiff, for the reason that no bill of particulars had been ever filed, the records and files showing that the same was demanded; that the court erred in denying defendant's motion for a directed verdict for the reason that the plaintiff's declaration failed to state a cause of action; that the court erred in permitting one of plaintiff's attorneys to argue to the jury that the plaintiff was entitled to interest at 5 per cent. per annum. There are also specific assignments of error in refusing to give each of defendant's requests above set forth; and that the court erred in charging the jury in the language contained in paragraph 11 of the general charge, which was as follows:

"In determining those two questions, you may take into consideration and should take into consideration,

all the evidence in the case, the rate of speed and the direction in which the engine was running at the time, the direction of the wind, the distance that the engine passed from where the fire was first discovered, the condition of the engine and its machinery, and its manner of operation in the vicinity of the land upon which the fire started, also the weather conditions, also the time when said engine went by and along said land, also the length of time that intervened between the passage of the engine and the discovery of the fire, and all other evidence in the case which throws any light upon any one of these questions; and after such consideration, if you should find that said fire was not started by a spark thrown upon plaintiff decedent's land by an engine operated by said defendant, then your verdict should be no cause of action. Or, if you should find that a spark from said engine set said fire upon the land of plaintiff's decedent, and that plaintiff's property was thereby destroyed, and you should further find that such spark was thrown from an engine whose machinery, smokestack or fire boxes were in good order and properly managed, then your verdict should be for the defendant. But if you should find that such loss or damage was caused by fire originating from a spark emitted from said engine at said time and place, and that the defendant has not shown to your satisfaction that said fire originated from a spark thrown by an engine, whose machinery, smokestack or fire boxes were in good order, and properly managed, then your verdict should be for the plaintiff. And when I speak of an engine here, I mean the engine testified to as a light engine that passed the mill, as shown by the testimony, a short time prior to the discovery of the fire."

That the court erred in charging the jury in the language contained in paragraph 12, which was as follows:

"Now, in this case, if the plaintiff is entitled to recover at all, he is entitled to recover a true cash value of the sawmill and storehouses and the other personal property being machinery, as testified to here, as they were on the premises at the time they were destroyed;

and in determining the value of the sawmill and store-houses and such personal property, you are to take into consideration all the facts connected with such property, such as its cost, its age, its condition, the uses to which it had been put, its location, and any other fact which, in your opinion, fixes or determines what its true cash value was at the time of the fire, excepting therefrom such property as you may find was, saved from destruction by the fire. As to the lumber and products of the mill, if the plaintiff is entitled to recover, he is entitled to recover the fair market value of such lumber and products at the time and place of such fire.. And when you have determined the amount of said damages, if you should find the plaintiff is entitled to any damages in this case, you should add thereto interest thereon, at the rate of five per cent. per annum from the date of the commencement of this suit, being December 11, 1895, and adding such interest to the amount of the damages found by you, the result would be your verdict herein, if you find in favor of the plaintiff."

And, finally, that the court erred in charging the jury, as matter of law, that this suit and cause were properly prosecuted here by the present administrator of said estate; and that the fact that the case had not been brought on for trial before did not, as a matter of law, bar plaintiff's right to recover.

The errors assigned are discussed by appellant under the following heads:

(1) The declaration fails to state a cause of action.

(2) It was error to permit the plaintiff to amend his declaration by changing the allegation of the date of the fire from July 18, to July 17, 1895, for the reason that such amendment set up a new cause of action, barred by the statute of limitations.

(3) There was a fatal variance between the declaration and the proofs, in that the declaration alleged that the fire was caused by a locomotive drawing a freight train, while the proof showed that a light engine caused it, if it was caused by any locomotive, running on defendant's railroad.

(4) Plaintiff cannot maintain this suit because the cause of action had been assigned to Judith C. Sayre.

(5) The right to prosecute the suit was abandoned, lost, through the long failure to prosecute. The statute of limitations is a complete defense.

(6) Interest was improperly allowed.

1. It is urged by counsel at great length that under our statute (2 Comp. Laws 1915, § 8305) a railroad's liability for a fire originating from its road is the common liability for setting fires, the effect of the statute being merely to shift the burden of proof, and the following cases are cited: *Fisk* v. *Railroad Co.*, 114 Mich. 248; *Dolph* v. *Railway Co.*, 149 Mich. 278; *Pennsylvania Fire Ins. Co.* v. *Railroad Co.*, 184 Mich. 375; *Beach* v. *Railroad Co.*, 190 Mich. 592; *Schindler* v. *Railway Co.*, 77 Mich. 136. There are many quotations from the last cited case, and other cases are cited. It is also claimed that where a declaration wholly fails to state a cause of action, advantage may be taken of it on the trial, and *Stoflet* v. *Marker*, 34 Mich. 313, and other like cases are cited. Upon the subject of the date of the fire the language of this court in *Hewitt* v. *Railroad Co.*, 171 Mich. 211 (41 L. R. A. [N. S.] 635), is quoted at length. Aside from the change in the date of the fire, attention is called to the fact that the time of day, when the fire occurred, is nowhere alleged.

It should be borne in mind that at the time the amended declaration was permitted and filed the judicature act was in effect, as well as Circuit Court Rule No. 22, § 1, which provides that:

\* \* \* "No declaration shall be deemed insufficient, which shall contain such information as shall reasonably inform the defendant of the nature of the cause he is called upon to defend."

In *Malloy* v. *Railway Co.*, 192 Mich. 344, at page 350, this court held that the purpose of the pleading is to enable the defendant to prepare his defense.

After the case was placed upon the calendar under the judicature act, defendant filed motions to dismiss, but no objection was made to the sufficiency of the declaration. That the declaration was not attacked was mentioned in the former decision of this court. (See page 420 of opinion.)

The fact that no demurrer was interposed, or motion made, and in view of the present liberal rule relating to pleadings, we cannot say that the declaration was insufficient. The language of this court in *Jolman* v. *Alberts*, 186 Mich. 643, at page 645, is pertinent here. There is no claim of surprise urged here in regard to the time of day of the fire—or with reference to the light engine. The record discloses that shortly after the fire the defendant took a written statement from Libbie Dumond Fowler which disclosed the hour of the fire and the westbound light engine, and, as already stated, plaintiff's attorney in opening the case on February 19, 1918, referred to those matters.

Under the statute the plaintiff must show by evidence which reasonably leads an unbiased mind to the conclusion that the particular engine caused the fire. *Clark* v. *Railway Co.*, 149 Mich. 400 (12 Ann. Cas. 559) ; *Hewitt* v. *Railroad Co., supra.*

"The making of a *prima facie* case by simple proof of the setting of the fire arose out of the difficulty of a plaintiff to prove the defect, and from the fact that the construction, condition, and management of the engines are peculiarly, if not exclusively, within the knowledge of the company's employees." .*Dolph* v. *Railway Co., supra.*

2. Was it error to permit the plaintiff to amend his declaration by changing the allegation of the date of the fire from July 18, 1895, to July 17, 1895, for the reason that such amendment set up a new cause of action, barred by the statute of limitations? We

think not. A mere change in date does not introduce a new cause of action. *Hapke* v. *Davidson*, 180 Mich. 138, 148. In that case Justice KUHN, speaking for a unanimous court, said:

"The mere change in the date did not, in our judgment, introduce a new cause of action, and, under the rule announced in *Pratt* v. *Montcalm Circuit Judge*, 105 Mich. 499, unless this is the result, the amendment is proper. As stated in 1 Enc. Pl. & Prac., p. 564:

" 'The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony.' "

See, also, the cases cited by Justice KUHN.

Here again the defendant was not surprised by the change of date. The record shows that on November 25, 1895, the defendant filed the affidavit of Lewis C. Stanley in the case, in which he stated, among other things, that "deponent is informed and believes that the actual wrong and injury to this place occurred on a different day than they named in said declaration." On October 18, 1916, the affidavit of George F. Dick was filed by the defendant, in which he stated that the fire occurred on July 17, 1895. These affidavits were before the court when the amendment was permitted. *Hewitt* v. *Railroad Co.*, *supra*, cited by defendant upon the question of dates, is readily distinguished from the instant case.

3. We do not think there was a fatal variance between the declaration and the evidence for the reasons already stated.

4. Can the plaintiff maintain this suit, notwithstanding the assignment to Judith C. Sayre? There can be no question that this cause of action survived (3 Comp. Laws 1897, § 10117). Nor can there be any question that it was assignable. In the early case of *Final* v. *Backus*, 18 Mich. at page 231, Chief Justice COOLEY, speaking for the court, said:

"The position is that the right of action for a tort is not the subject of assignment; and this we understand to be the general rule." (Citing cases.)

"But this rule applies only to those torts which are merely personal, and which, on the death of the person wronged, die with him; while torts for taking and converting personal property, or for injury to one's estate, and generally, all such rights of action for tort as would survive to the personal representatives, may, it seems, be assigned so as to pass an interest to the assignee which he can enforce by suit at law." (Citing cases.)

This case has been followed and cited in many cases. *Boynton* v. *Roe,* 114 Mich. 401, 408; *Holmes* v. *Loud,* 149 Mich. 410, 413; *Perkett* v. *Railroad Co.,* 175 Mich. 253, 264.

It is pertinent to examine the statute in force at the time of the death of Charles H. Sayre, and at the time of the assignment. This case was pending and at issue at both of those dates. Section 10113, 3 Comp. Laws 1897, reads as follows:

"In all personal actions, the cause of which does by law survive, if there is only one plaintiff, or one defendant, and the sole plaintiff or defendant shall die after the commencement of the action, and before the final judgment, the action may proceed and be prosecuted by or against the surviving party, and by or against the executor or administrator of the deceased party, in the manner provided in this chapter."

Section 10114:

"The death of the party shall be suggested on the record, and his executor or administrator may thereupon appear and take upon himself the prosecution or defense of the suit, as the case may be; and it *shall* be thenceforth conducted in the same manner as if it had been originally commenced by or against the same executor or administrator."

Section 10115:

"If the executor or administrator does not volun-

tarily appear on or before the first day of the next term after the death of such party, the surviving party may have an order of course, that the executor or administrator appear and take upon himself the prosecution or defense of the suit, within thirty days after the service of notice of such order."

Section 10116:

"If the executor or administrator shall not appear within the time limited by such order, or within such further time as the court shall allow for that purpose, he shall be nonsuited or defaulted, and judgment shall be rendered against him in his representative capacity, and shall be evidence of a debt established, to be paid in the course of administration."

Conceding that this assignment covered this cause of action, the suit would not abate by reason of the assignment, and the case should have proceeded in the same manner as though no assignment had been made.

The transfer of a plaintiff's title or interest in a pending suit at law does not abate it, but the suit may proceed as instituted. *Peters* v. *Gallagher,* 37 Mich. 407; *Moon* v. *Harder,* 38 Mich. 566; *Toledo, etc., R. Co.* v. *Johnson,* 55 Mich. 456.

So long as the assignee acquiesces in the proceeding, and permits the suit to go on in the name of the assignor, the defendant cannot complain as he is in no way injuriously affected thereby. Any judgment that may be recovered in such action will protect him, and be a bar to any future proceedings which the assignee might undertake to commence, for the same cause of action. *Peters* v. *Gallagher, supra.*

So, in our opinion, it was still necessary for the death to be suggested, and the suit to be continued in the name of the personal representative of the deceased plaintiff, under the very terms of the sections of the statute above quoted. He alone could prosecute it. This case could not be affected by the provisions

of the judicature act invoked by the defendant (3 Comp. Laws 1915, § 12353).

The right to have an administrator *de bonis non* appointed is not really before us. That is not an open question, but was settled upon the appeal from the probate court to the circuit court. No appeal was taken from the action of the circuit court, and the matter is *res adjudicata.*

It is further urged by defendant that the rule is well established that laches constitutes good ground for denying a petition to revive, and many cases are cited from other jurisdictions, the leading one being *Lyon* v. *Park*, 111 N. Y. 350 (18 N. E. 863). It may be doubted if that question is before us, as the order suggesting the death was not excepted to, nor is error assigned upon it. But treating it as an open question, we do not think that the cases cited are either controlling or persuasive under our statute. All of the cases cited are from States where the statutes materially differ from ours. Most of them are equity cases, and many of them deal with the death of defendants, where the property of deceased had been distributed, and conditions materially changed.

In *Vickery* v. *Beir*, 16 Mich. 50, it was held that the proceeding to substitute the administrator is entirely a matter of statutory regulation. It was there said:

"The proceeding on suggesting the death of a plaintiff is entirely *ex parte*, and there is no provision of statute by which notice of it is to be given to the defendant."

Under our statute such suggestion is a matter of course, and there is no provision for a contest, as there is in the States from which cases are cited.

In the examination of this record one is impressed with the fact that, notwithstanding the lapse of time between the institution of this suit and the trial, the

responsibility for the delay did not rest upon the plaintiff solely. The defendant could have brought on the case at any time, under the provisions of the statute above quoted, and the case dismissed on defendant's motion. Its records were not destroyed until about twelve years after the case was at issue and the deceased witnesses died later. As we said when the case was here before: "A notice from either party would have placed it upon the trial docket," yet the case was allowed to slumber. In the absençe of the running of the statute of limitations, should the court be swift to place all of the responsibility for this delay upon the plaintiff, and refuse a trial upon the merits? We think not.

5. It is claimed finally by the defendant that the statute of limitations is a complete defense, and section 12320, 3 Comp. Laws 1915, is invoked, which reads as follows:

"If any action, of which the commencement is limited by this chapter, shall be abated by the death of any party thereto, or if, after verdict for the plaintiff, the judgment shall be arrested, or if judgment in any such action be given for the plaintiff, and the judgment shall be reversed for error therein, the plaintiff or any person claiming from, by or under him, may bring an action for the same cause at any time within one year after the determination of the original action, or after the reversal of the judgment."

It is claimed that under this statute the right of revivor lapsed one year after the abatement of the suit by Sayre's death. The difficulty with this position is that the suit did not abate upon Sayre's death, and the statute has no application except in actions which "shall be abated by the death of any party thereto." By the express terms of the statute which we have quoted, this action did not abate upon the death of the plaintiff—hence the statute invoked does not apply. The cases cited by counsel like *McKenzie*

v. *A. P. Cook Co.,* 113 Mich. 452, and *Conley* v. *Sinclair,* 163 Mich. 306, were ejectment cases, in which by the statute the death of a sole defendant did abate the action.

6. Lastly, it is claimed that interest was improperly allowed. We cite the following cases in support of the charge upon this subject. *Kendrick* v. *Towle,* 60 Mich. 363, 368 (1 Am. St. Rep. 526) ; *Taylor* v. *Railway Co.,* 101 Mich. 140, 146; *Larsen* v. *Telephone Co.,* 164 Mich. 295, 324, 328. See cases cited.

We find no error in the charge, and in our opinion the case was properly submitted to the jury in a careful charge.

Finding no reversible error in the case, the judgment of the circuit court is affirmed.

Bird, C. J., and Ostrander, Moore, Steere, and Kuhn, JJ., concurred with Stone, J. Brooke and Fellows, JJ., concurred in the result.